SEGER *v.* NORTHWESTERN COOPERAGE & LUMBER CO.

MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—FELLOW-SERVANTS.

Evidence that plaintiff, who was in defendant's employment, was, at the time of his injury, engaged in removing a set screw from certain machinery, and that two servants of the defendant permitted a roller weighing between 150 and 200 pounds to slip from their grasp and fall down a stairway striking plaintiff, that there was grease on the shaft of the roller so as to make it difficult to handle, and that the cause of the injury was the slipping of the

roller from the hands of one of the employees who was carrying it, did not tend to establish actionable negligence on the part of the defendant, and warranted the trial court in directing a verdict for the defendant.

Error to Delta; Flannigan, J. Submitted November 4, 1914. (Docket No. 138.) Decided January 4, 1915. Rehearing denied July 23, 1915.

Case by Adelbert M. Seger against the Northwestern Cooperage & Lumber Company for personal injuries. Judgment for defendant upon a directed verdict. Plaintiff brings error. Affirmed.

*A. W. Wolfe* (*C. D. McEwen,* of counsel), for appellant.

*G. R. Empson,* for appellee.

MOORE, J. This is a personal injury case. From a directed verdict in favor of the defendant the case is brought here by writ of error.

The facts are not complicated. In addition to the oral proof, a photograph was introduced in evidence. This shows an iron stairway running from the lower floor of defendant's sawmill, which was used as a repair shop, to the floor above. This was a substantially built stairway, with open spaces at the back between the steps, with an iron handrail at the side at the proper height, and midway between this rail and the steps was another iron rail running parallel with the handrail. Under this stairway was a window. Still further back were three other windows. The plaintiff was foreman of defendant's hoop mill. He had occasion, just before noon, to remove a set screw from an arbor. It became necessary to drill it out. He attempted to do this at a bench 10 or 12 feet away from the stairs. Fearing he was drilling too deep, he stepped over to the window under

184 Mich.—4.

the stairs to examine his work, and an iron roller fell from the stairway, and hurt him severely.

The foreman of the sawmill testified that this roller was at the head of the stairs, that he directed two men to carry it downstairs. "The roller weighed about 150 pounds. One man could pick it up very easily."

The plaintiff testified about the roller on cross-examination:

"The roller was approximately three feet long. It was not solid. As I figure it, its weight was a little less than 200 pounds. The shaft projected at one end about four inches and the other about seven. It was a 2¼-inch shaft; it was a little less. The grease and frost in combination with its shape and weight made it dangerous to carry down the stairway. The shaft was a little bit large for a good hand hold."

The claim of negligence is that the men should have been instructed not to let the roller get away from them, or that it should have been lowered with ropes.

One of the men carrying the roller was nearly 20 years old, and, though only a short time in the mill, was used to manual labor, and weighed about 160 pounds.

The young man testified:

"The roller was lying between the log deck and the re-saw. Emil Lundstrum was working with me. I guess he was about 30 years old. I guess he was larger than I was. He was not very much taller. To carry it downstairs, well I took hold of one end, and he held hold of the other, and just as I got four or five steps down on the stairway I changed hands, and at the time I missed my hold and the roller slipped away from me. I can't tell now whether I had mittens on or not; it was two years ago.

"*Q.* State whether or not there was oil or grease on the end of the roller?

"*Mr. Empson:* I object to that as incompetent, irrelevant, and immaterial.

"*The Court:* Oh, let us know just what the conditions were.

"*A.* I can't tell anything about that. I don't know, but I guess the roller had been used before. In carrying it down I went first. The end of the roller I had hold of may be an inch and a half diameter. The roller was seven or eight inches through the big part. The roller was hollow. I don't know how much it weighed; it was a little heavy, all right.

"*Q.* Was it about all you could do to lift it to carry your end of it?

"*A.* Oh, I could lift it all right. As we went down the stairs, my end became heavier.

"*Q.* Did you let it fall because it was heavy, or because it slipped?

"*Mr. Empson:* I object to that.

"*Mr. Wolfe:* I don't know whether Mr. Barrett gave us any instructions or not; I couldn't understand English at that time. He didn't give me any because he knew I couldn't understand. I had never had any experience in handling machinery before. I was 20 years old in October, 1910. I am still growing in height. I have not grown much since January 1, 1910. I don't know as I am stronger now than I was then.

"*Q.* Did you give any warning to the men below that you were going to carry that roller downstairs?

"*A.* Yes, I hollered, 'Look out!' I hollered at the time I lost my hold. At the time I lost my hold, I just happened to look below, and I saw a man on the floor, and I hollered out. It rolled down a couple of steps on the stairway and then rolled off the side. I can't tell the condition of the side of the stairway. I am working for the defendant now."

Counsel in the briefs discuss the doctrines of fellow-servant, assumed risk, and contributory negligence. We think it unnecessary to dwell upon them for the reason that the facts disclosed by the record do not show actionable negligence on the part of the defendant.

Judgment is affirmed.

BROOKE, C. J., and McALVAY, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.